**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

────────────────────────────────────────────

**MICHAEL BARRETT,**

                              **Petitioner,**                    **06-CV-1324**
                                                                 **[95-CR-232]**

          **v.**

**UNITED STATES OF AMERICA.**

                              **Respondent.**

────────────────────────────────────────────

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I.  INTRODUCTION**

Previously, this Court denied Petitioner Michael Barrett's motion to vacate his conviction

pursuant to 28 U.S.C. § 2255. See 6/27/05 Dec. & Ord., dkt. # 22 in Barrett v. United States, 04-

CV-848 (N.D.N.Y.)("Barrett I").  Thereafter, the Court granted in part and denied in part

Petitioner's motion for reconsideration and, upon reconsideration, denied and dismissed Petitioner's

Section 2255 motion. See 6/27/06 Dec. & Ord., dkt. # 32 in Barrett I.  The Court also denied

Petitioner a Certificate of Appealability pursuant to 28 U.S.C. § 2253.  Id.  On July 24, 2006,

Petitioner field a Notice of Appeal from the Court's June 27, 2006 Decision and Order. See Not.

App., dkt. # 34 in Barrett I.

On September 1, 2006, Petitioner filed the instant "Motion for Relief From Judgment Under

a Hazel-Atlas Action" under the civil action number assigned to his unsuccessful Section 2255

1

motion. See dkt. # 37 in Barrett I.  Petitioner argues that his 1996 conviction was secured by the

fraudulent representation of the government in regards to the known criminal activity of a

cooperating witness who testified against Petitioner at his 1996 trial. Id.  The government opposes

the "Hazel-Atlas Action," arguing that: (1) the motion is a second or successive Section 2255

motion that may not be brought because Petitioner has not received authorization from the Second

Circuit Court of Appeals; and (2) the filing of the Notice of Appeal in the Section 2255 action

divests this Court of jurisdiction to consider the motion. See Govt. Opp., dkt. # 38 in Barrett I.

Petitioner responds that, although he filed the "Hazel-Atlas Action" under the Section 2255 civil

action number, "it is distinct from a habeas petition" and, therefore, "the court should issue

petitioner a new civil number under his Hazel-Atlas motion." Pet. Reply [dkt. # 39].

For the reasons that follow, the Court (1) assigns a new civil action number to the "Hazel-

Atlas" motion; (2) denies that portion of the motion that attacks the underlying conviction as a

second or successive Section 2255 motion that has not been authorized by the Second Circuit Court

of Appeals; and (3) denies that portion of the motion that attacks the prior Section 2255 decision.

## II.  BACKGROUND[1]

In the fall of 1995 and January of 1996, the government indicted and charged Archie Joyner

and forty (40) members of his criminal organization (the "Joyner organization") with various

narcotics crimes, gun possession counts, distribution counts, arson-murder counts and Continuing

Criminal Enterprise ("CCE").   The indictment alleged that from 1989 through January 1995, the

Joyner organization controlled and sold narcotics from various bars in Binghamton, New York.

---

[1]Much of this factual background is taken from this Court's March 12, 1998 Memorandum-Decision and Order issued on Petitioner's motion for new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. See United States v. Barrett, 997 F. Supp. 312, 313-15 (N.D.N.Y. 1998)(McAvoy, C.J.).

According to the indictment, Barrett's role (and that of his co-defendant, Craig Sweat) was operating one such bar called Choices.  The indictment charged Barrett and Sweat with engaging in a CCE and conspiracy to distribute a controlled substance.

Before trial, thirty-one (31) of the indictees pleaded guilty and agreed to testify against the remaining defendants.  One such indictee was Shatima Turner, whom the Court released on pre-trial supervision.  On April 2, 1996, the trial commenced.   On June 4, 1996, the trial jury returned a verdict against four of the defendants but were deadlocked 11-1 in favor of conviction with respect to defendants Barrett and Sweat.

Between the end of the first trial and commencement of Barrett and Sweat's second trial, the government received information regarding cooperating witness Shatima Turner.  According to the government, an Endicott police investigator, Richard Mikulski, informed the government that on May 17, 1994, a female New York State Police Community Narcotics Enforcement Team ("CNET") police officer purchased cocaine from an African-American female identifying herself as "Lexus" in Sam's Bar in Endicott, New York. Mikulski further informed the government that during the ensuing summer, a confidential Endicott police informant ("CI") told the Endicott Police that the CI was acquainted with Shatima Turner and that she was using the name "Lexus."   Mikulski also stated that Endicott police had stopped a car that summer with at least two African-American females inside who had identified themselves as Shatima Turner and Lexus.

Following that telephone conversation, the government states that it contacted the Broome County District Attorney to request assistance in identifying "Lexus" from the undercover CNET police officer.  On or about November 4, 1996, the CNET officer participated in a photographic identification.  The CNET officer, however, was unable to identify "Lexus" from the group of

3

photographs presented, which included a photograph of Shatima Turner.

On November 15, 1996, the government received information from a New York State Police Troop C Narcotics informant, Julie Gofkowski, who had testified at the first trial concerning the defendants' activities at Choices. Gofkowski told the government that that summer, while she was driving her car and stopped at a stop sign, an African-American female approached her on foot and inquired, "What do you need?" Gofkowski said she believed this individual to have been Shatima Turner.

On November 15, 1996, the government memorialized the above events in a letter to the Court with copies sent to defendants' attorneys. On November 20, 1996, the government filed a Supplemental Trial Memorandum addressing the permissible scope of cross-examination of Shatima Turner in light of the above events.

The second trial against Sweat and Barrett commenced on November 25, 1996. At the outset of trial, the government raised the issue whether defendants could cross-examine Shatima Turner regarding her alleged distribution of cocaine between the first and second trial. After hearing oral argument, the Court offered defendants the opportunity to submit legal authority in response to the government's Supplemental Trial Memorandum. On December 5, 1996, the Court ruled that defendants were foreclosed from cross-examining Shatima Turner regarding alleged cocaine distributions between the time of the first and second trial. Thereafter, Shatima Turner, along with 21 other witnesses, testified at trial. On December 11, 1996, the jury convicted defendants Sweat and Barrett on the CCE and drug conspiracy charges.

A month later, the government asserts that a DEA agent contacted the Binghamton Office of the United States Attorney to coordinate a joint federal-state-local drug investigation. With the

4

participation of the United States Attorney's Office, a narcotics investigation commenced in the

Broome County area called "Operation Golden Road."  The investigation culminated in May 1997

with the indictment of 88 defendants, including Shatima Turner, a/k/a "Lexus."  The indictment

charged Turner with conspiracy to distribute cocaine on both June 19, 1996 and on various

occasions from January 1997 through April 1997.

On March 20, 1997, this Court sentenced defendants Sweat and Barrett.  Subsequently,

defendants filed a timely notice of appeal.  Defendants also filed a Rule 33 motion for a new trial

with the Second Circuit in August 1997.  During oral argument before the Second Circuit panel,

however, defendants agreed to withdraw their Rule 33 motion before the Second Circuit and refile it

with this Court.

On their Rule 33 motion before this Court, Defendants Barrett and Sweat claimed that a new

trial was mandated because the government failed to disclose material impeachment evidence

concerning its cooperating witness Shatima Turner, in violation of Brady v. Maryland, 373 U.S. 83,

83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  In this regard, Defendants asserted that the government was

in possession of more information regarding Shatima Turner than was supplied in the government's

November 15, 1996 letter to the Court.  To support their position, defendants cited to what they

termed new evidence: the May 1997 indictment against Turner, which listed "Lexus" as one of

Turner's aliases and charged her with, among other things, the June 19, 1996 sale of cocaine.  Based

on the indictment, defendants contended that the government must have known more information

regarding Shatima Turner's drug activities and that the government may have purposefully halted an

investigation of Turner to maintain her credibility.

The government responded by affidavit asserting that it disclosed all information then

known to the government in its November 15, 1996 letter to the Court.  The government also

refuted defendants' unsupported allegations that Shatima Turner was the target of any federal

investigation either before or during the second trial.   As explained by the government, Shatima

Turner did not become the subject of a federal investigation until commencement of Operation

Golden Road.  Thus, according to the government, information regarding Turner's drug activities, as

charged in the May 1997 indictment, did not surface until the narcotics investigation commenced

after the second trial.   Furthermore, the government explained that the June 19, 1996 sale of

cocaine charged in the indictment was based on circumstantial evidence and a <u>Pinkerton</u> theory of

liability, and there was no other corroborating evidence that the "Lexus" involved in the sale of

cocaine on that date was Shatima Turner.

> This Court denied the motions, holding:
>
> It is plain that defendants' argument is based on little more than rank speculation.
> <u>See</u>, <u>e.g.</u>, <u>United States v. Upton</u>, 856 F. Supp. 727, 746 (E.D.N.Y. 1994)(stating that
> mere speculation is insufficient to establish <u>Brady</u> violation).  The government
> unequivocally states that it disclosed all available information regarding Shatima
> Turner in its November 15, 1996 letter to the Court and defendants.   Defendants'
> unsubstantiated and baseless accusations that the government possessed additional
> information not disclosed in the November 15, 1996 letter do not, without more,
> provide reason for a new trial.
>
> Moreover, the May 1997 indictment of Shatima Turner is hardly the smoking gun
> that defendants maintain.   As explained by the government, it did not learn of any
> further information regarding Shatima Turner until commencement of Operation
> Golden Road *after* defendants' second trial.  In short, all we have in this case is
> unsupported speculation by defendants that the government failed to disclose <u>Brady</u>
> material regarding a cooperating witness.  In light of the governments' uncontradicted
> explanation for its actions, the Court finds that defendants' argument does not rise to
> the level of a <u>Brady</u> violation, and thus, a new trial is not warranted.

<u>United States v. Barrett</u>, 997 F. Supp. 312, 316 (N.D.N.Y. 1998)(McAvoy, C.J.)(emphasis in

original).

On appeal, the same issue was raised by Barrett and rejected by the Second Circuit Court of Appeals. See United States v. Joyner, 201 F.3d 61, 82 (2d Cir. 2000)("Joyner I").[2] The Second Circuit affirmed Petitioner's CCE conviction but vacated the drug conspiracy charge. See id. at 67 (citing Rutledge v. United States, 517 U.S. 292 (1996) in which the Supreme Court held that a drug conspiracy is a lesser included offense of a CCE.). Additional appellate arguments were considered and rejected in a separate opinion. See United States v. Joyner, 313 F.3d 40, 46-48 (2d Cir. 2002)("Joyner II"). Petitioner's petition for a writ of certiorari to the United States Supreme Court was denied on February 23, 2004. Barrett v. U.S., 540 U.S. 1201 (2004).

In July of 2004, Petitioner attempted to file, and consolidate, Section 2255 motions on his own behalf and on behalf of his co-defendant, Craig Sweat. See Barrett I, dkt. #s 1-4; Sweat v. United States, 3:04-CV-849, dkt. # 1 (Petition filed by Barrett on behalf of himself and Sweat). The motion to consolidate the two actions was denied by the Court, and Petitioner was directed to file an amended Section 2255 petition. Barrett I, dkt. # 9. Petitioner filed an Amended Petition, and, in doing so, rested primarily on his claim that his trial counsel was constitutionally ineffective. See id. dkt. # 11 (Rev. Mem. L). Barrett did not assert a Brady violation stemming from the purported

---

[2] In this regard, the Second Circuit wrote:

> In May 1997, five months after Barrett and Sweat's second trial, Shatima Turner--the government's key witness at Barrett and Sweat's retrial--was indicted on federal drug trafficking charges. Barrett and Sweat filed a motion for a new trial on the ground that the government had suppressed the evidence of her 1996 drug crime. The court denied the motion for a new trial, finding that the prosecutor did not know of Turner's drug crime during the retrial and that he disclosed what evidence he had prior to trial. On appeal, Barrett and Sweat again claim that, at the time of their retrial, the government must have known that Turner was the target of an ongoing investigation and that its failure to disclose this information constitutes reversible error. However, we see no such error. The prosecutor's affidavit stated that he did not know of Turner's 1996 drug crime at the time of Barrett and Sweat's retrial, and the court was entitled to credit that affidavit.

Joyner I, 201 F.3d at 82.

government fraud related to its disclosure of Shatima Turner's criminal activity before the second

trial although Barrett's co-defendant, Craig Sweat, did renew this argument in his Section 2255

motion.  Further, despite numerous opportunities afforded by the Court that allowed Barrett to

advance new arguments not contained in his Amended Section 2255 motion,[3] Barrett did not assert

this argument until *after* the Court denied his motion for reconsideration.  Even then, Barrett first

raised the purported <u>Brady</u> violation in his reply papers.

 In this regard, on his motion for reconsideration, Barrett attached a few pages from Craig

Sweat's Memorandum of Law in support of his Section 2255 motion, and a December 17, 2004

affidavit from Shatima Turner submitted in Sweat's Section 2255 case. <u>See</u> Mot. for Recon., dkt. #

24 in <u>Barrett I</u>.  The attached portion of Sweat's Memorandum of Law addresses the asserted <u>Brady</u>

violation that purportedly occurred between the first and second trials. In Turner's affidavit, she

attests (in addition to admitting that she provided false testimony "at trial concerning Mr. Sweat",

<u>see</u> Turner Aff. ¶ 14) that at a proffer session before one of Barrett's trials (the date is not clear) she

was "warned by one of the agents that an investigation revealed that [she] was continuing [her]

criminal activity and that [she] should stay out of trouble."  Turner Aff. ¶ 12.  Citing these pages

from Sweat's Memorandum of Law and Turner's affidavit, Barrett argued:  "Had counsel acted as

required by the Sixth Amendment, he would have been able to uncover what was there all along."

---

[3] After Barrett filed his Amended Section 2255 motion, he was allowed to "expand the record" and make
additional claims.  In this regard, he asserted that trial counsel was constitutionally ineffective because he failed to ferret
out that Shatima Turner testified falsely at trial because Barrett spurned her romantic overtures.  <u>See</u> <u>Barrett I</u>, dkt. # 12
in <u>Barrett I</u>. He supported this allegation with an affidavit from Turner in which she asserted that  she lied on the witness
stand related to certain conduct and circumstances concerning Barrett. As noted in the June 27, 2005 Decision and Order
in <u>Barrett I</u>: "Petitioner does not allege that Turner's perjured testimony affected the outcome of his trial, <u>see</u> <u>Ortega v.
Duncan</u>, 333 F.3d 102, 108 (2d Cir. 2003)(Generally, in order to challenge a conviction on the basis of perjured
testimony, a petitioner must also show that "the testimony was material and ... but for the perjured testimony, the
defendant would most likely not have been convicted."), but rather uses it to buttress and illustrate his ineffective
assistance of counsel claim." <u>Id.</u> p. 12, n. 6. In addition, Barrett was allowed to file numerous "reply" briefs before the
Court ruled on his Section 2255 motion. <u>See</u> dkt. #s 13, 17, 19, 21 in <u>Barrett I</u>.

Dkt. # 24 in Barrett I.  Thus, by all appearances, Barrett was using Turner's affidavit to reassert his ineffective assistance of counsel argument.

The government opposed Barrett's motion for reconsideration and asserted that all of the arguments proffered by Barrett were previously considered and rejected, and were, nevertheless, without merit. See Govt. Opp. to Mot., dkt. # 26 in Barrett I.  In reply, Barrett again asserted his previously proffered arguments, and directly asserted that the government committed a Brady violation because it failed to turn over information of Turner's criminal activity between the two trials.  See dkt. # 30 in Barrett I.  In support of his position that the Government was aware of this information, Barrett cited to Turner's affidavit, and offered the affidavit and selected pages from the Plea and Cooperation Agreement of Junior Frederich, one of Turner's co- defendants in the Operation Golden Road case. See dkt. # 30, Exs. II & III in Barrett I.  Frederich asserted in this affidavit that he has "first hand knowledge" that "the government did 'in fact' know that Shatima Turner was involved under the name 'Lexus'." Id., Ex. II at ¶ 3.  According to Frederich's affidavit, his "first hand knowledge" is based on assurances made by the prosecutor when Frederich signed his Plea and Cooperation Agreement on December 1, 1997 that "110 Clinton Street was under surveillance during the summer of 1996." Id. ¶ 5.[4]  Because Barrett brought up the purported Brady violation for the first time in his reconsideration motion (and, essentially, in his reply papers), and because a motion for reconsideration is not the proper vehicle for rasing a claim for the first time, the Court did not address the merits of this argument. See 6/27/06 Dec. & Ord. at p. 2, dkt. # 32 in Barrett I.

---

[4] It is unclear why Barrett offered the pages from Frederich's Plea and Cooperation Agreement other than to establish that Turner was one of Frederich's co-conspirators in his admitted cocaine distribution conspiracy and to establish the date he entered the agreement. See Id. ex. III, at p. 2.

As indicated, Petitioner now attempts to revive the <u>Brady</u> violation argument on his "Hazel-Atlas Action." In this regard, Petitioner relies upon the same "evidence" he submitted in his Section 2255 motion - Turner's Affidavit, Frederich's Affidavit and Plea Agreement, and a legal argument made in Craig Sweat's Section 2255 case[5] - to support his theory that the government obtained his conviction by perpetrating a fraud upon the Court.

## III. DISCUSSION

### a. Jurisdiction

The first question is whether the Court is divested of jurisdiction because Petitioner filed this "Hazel-Atlas Action" under the civil action number assigned to his Section 2255 motion after the motion was denied and a notice of appeal filed. In reply to the government's argument, Petitioner argues that he is bringing an independent action under the "fraud on the court" doctrine articulated in <u>Hazel-Atlas Glass Co. v. Hartford-Empire Co.</u>, 322 U.S. 238, 249-50, 64 S.Ct. 997, 1002-03, 88 L.Ed. 1250 (1944).

As explained below, an action brought pursuant to <u>Hazel-Atlas</u> is, essentially, an action brought under the "savings clause" of Federal Rule of Civil Procedure 60(b). <u>See</u> Fed. R. Civ. P. 60(b)("This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment . . . or to set aside a judgment for fraud upon the court."). In an abundance of caution arising from Petitioner's *pro se* status, the Court has assigned this application its own civil action number. This decision, however, does not mean that the Court finds that Petitioner's claim meets the strict standard for successfully maintaining an independent action under Fed. R. Civ. P.

---

[5]On the instant motion, Barrett presents as an exhibit Craig Sweat's entire Memorandum of Law in support of Sweat's motion for reconsideration in his Section 2255 action.

60(b) as discussed below.

"[T]he filing of a notice of appeal normally 'divests the district court of [jurisdiction] over those aspects of the case involved in the appeal.'" United States v. Camacho, 302 F.3d 35, 36 (2d Cir. 2002)(*per curiam*)(quoting Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982)). After a notice of appeal is filed, the Court may entertain and deny a motion brought pursuant to Fed. R. Civ. P. 60(b). Toliver v. County of Sullivan, 957 F.2d 47, 49 (2d Cir. 1992)(*per curiam*). A Court "may *grant* a rule 60(b) motion after an appeal is taken only if the moving party obtains permission from the circuit court." Id. at 49 (emphasis in original).

For reasons discussed below, the Court must determine whether Petitioner's application is a second Section 2255 motion that implicates the gate-keeping provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), see 28 U.S.C. §§ 2255, 2244(b)(3)(A),[6] and whether it presents cognizable arguments under Rule 60(b) related to the now-dismissed Section 2255 motion that the Court could entertain. Thus, the Court finds sufficient jurisdiction to address the substance of Petitioner's application.

### b. The "Fraud upon the Court" Doctrine

Federal Rule of Civil Procedure 60(b)(3) allows a Court to relieve a party from a final judgment based upon "fraud . . . , misrepresentation, or other misconduct." This rule generally applies to fraud perpetrated by one party upon the adverse party. See Gleason v. Jandrucko, 860 F.2d 556, 558 (2d Cir. 1988). Because the instant claim is premised upon a theory that the

---

[6]28 U.S.C. § 2244(b)(3)(A) provides:

Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

government perpetrated a fraud upon the Court, it does not necessarily fall within the realm of Rule 60(b)(3). Further, a motion pursuant to Fed. R. Civ. P. 60(b)(3) must be brought within one year of the judgment from which it seeks relief. See Fed. R. Civ. P. 60(b). Any claim that Petitioner would have under Rule 60(b)(3) has long since been extinguished.

By contrast, the savings clause of Rule 60(b) allows for an independent action asserting that a judgment has been obtained by fraud perpetrated upon the court by a court officer. See Fed. R. Civ. P. 60(b); Gleason, 860 F.2d at 558; Miller v. Shelton, 2006 WL 753187, at *4-*5 (W.D.N.Y. March 20, 2006). Under the theory that "a decision produced by fraud on the court is not in essence a decision at all and never becomes final," Kenner v. Comm'r of Internal Revenue, 387 F.2d 689, 691 (7th Cir. 1968), "[t]here is no statute of limitations for bringing a fraud upon the court claim." Williams v. Vaughn, 2005 WL 3348863, at * 2, n. 3 (E.D. Pa. Dec. 8, 2005)(citing Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244 (1944)).

This equitable power to vacate a judgment obtained by a fraud upon the court was recognized by the Supreme Court in the Hazel-Atlas decision. See Leber-Krebs, Inc. v. Capitol Records, 779 F.2d 895, 899 (2d Cir. 1985).[7] While the Supreme Court recognized this doctrine in

---

[7] As the Second Circuit noted in Leber-Krebs, Inc.:

> In Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 249-50, 64 S.Ct. 997, 1002-03, 88 L.Ed. 1250 (1944), the Supreme Court held that an appellate court had the power to vacate its own judgment upon discovery that a fraud had been perpetrated upon it. Hazel-Atlas deliberately did not define the metes and bounds of this "fraud on the court" doctrine, but it did make clear that it has always been "characterized by flexibility which enables it to meet new situations which demand equitable intervention, and to accord all the relief necessary to correct the particular injustices involved in these situations." Id. at 248, 64 S.Ct. at 1002. Courts obviously retain inherent power to ascertain whether their judgments were obtained by fraud. See Universal Oil Co. v. Root Refining Co., 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946); Alberta Gas Chemicals, Ltd. v. Celanese Corp., 650 F.2d 9, 12-13 (2d Cir.1981); see also 7 Moore's Federal Practice ¶¶ 60.16[5], 60.33 (1979).

779 F.2d at 899.

Hazel-Atlas, the saving clause of Fed. R. Civ. P. 60(b) provides coextensive authority. See

Williams, 2005 WL 3348863, at * 2, n. 3 ("The Hazel-Atlas doctrine is based on a savings clause in

Fed. R. Civ. P. 60(b), which specifically provides for the continuing existence of this equitable

power outside and independent of that rule.")(citing Charles Alan Wright et al., FEDERAL PRACTICE

AND PROCEDURE § 2870 (2d ed. 1995)); Cooey v. Bradshaw, 216 F.R.D. 408, 412 n. 12 (D. Ohio

2003)(The "'savings clause' of Rule 60(b) permits a party to file a motion for an independent action

or a fraud upon the court. These are separate sources for obtaining relief under the Rule.")(citing

Buell v. Anderson, 48 Fed. Appx. 491, 494-95 (6th Cir. 2002)).  Thus, whether a "fraud upon the

court" claim is styled as a "Hazel-Atlas Action" or a Rule 60(b) savings clause action, the analysis is

the same. See Roccisano v. United States, 2003 WL 21396668 (S.D.N.Y. June 17, 2003)(construing

an unsuccessful Section 2255 petitioner's "Hazel-Atlas Independent Action for Relief From Order

Denying Section 2255 Motion" as a Rule 60(b) motion).

"Although both clause (3) and the saving provision of Rule 60(b) provide for relief from a

judgment on the basis of fraud, the type of fraud necessary to sustain an independent action

attacking the finality of a judgment is narrower in scope than that which is sufficient for relief by

timely motion." Gleason, 860 F.2d at 558 (citing Hazel Atlas, 322 U.S. at 244-46). In this regard,

the type of fraud that involves witness perjury or fabricated evidence that does not involve officers

of the court and that could and should have been discovered during litigation and exposed at trial is

not enough. Id.  Instead, the petitioner must establish the type of fraud that "subvert[s] the integrity

of the court itself, or is ... perpetrated by officers of the court." Id. at 560.  To succeed on a "fraud

upon the court" claim, a petitioner "must satisfy a very demanding standard in order to justify

upsetting the finality of the challenged judgment. In order to prove fraud upon the court, the

13

petitioner must present clear, unequivocal, and convincing evidence of a 'deliberately planned and carefully executed scheme' by a court officer." Williams, 2005 WL 3348863, at * 2 (quoting Hazel-Atlas, 322 U.S. at 245 and citing Herring v. United States, 424 F.3d 384, 386-387 (3d Cir. 2005)).

### c.  Independent Action

An independent action for fraud upon the court may not be entertained if "'there was an opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action.'" M.W. Zack Metal v. Intern. Nav. Corp. of Monrovia, 675 F.2d 525, 529  (2d Cir.), cert. denied, 459 U.S. 1037, 103 S.Ct. 449, 74 L.Ed.2d 604 (1982)(quoting Serzysko v. Chase Manhattan Bank, 461 F.2d 699, 702 n. 2 (2d Cir.), cert. denied, 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972)).

> [T]he law is . . . clear that a court's discretion to entertain an independent action should be exercised only to avoid a "grave miscarriage of justice" or "manifest injustice." See, e.g., United States v. Beggerly, 524 U.S. 38, 47, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998)("an independent action should be available only to prevent a grave miscarriage of justice); Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244-45, 64 S.Ct. 997, 88 L.Ed. 1250 (1944)("[o]ut of deference to the deep rooted policy in favor of the repose of judgments entered during past terms, courts of equity have been cautious in exercising their power over such judgments[;][b]ut where the occasion has demanded, where enforcement of the judgment is 'manifestly unconscionable,' they have wielded the power without hesitation")(internal quotation omitted).

Miller, 2006 WL 753187, at *5.

### d. AEDPA's Gate-Keeping Provisions

While it is highly doubtful that Petitioner could maintain a successful independent fraud on the court action given the opportunity he had to litigate the claim in both the criminal and federal habeas proceedings, the threshold question presented by the government's opposition is whether the

action is, in actuality, a second or successive Section 2255 action that requires Circuit approval. See

28 U.S.C. § 2255; 28 U.S.C. § 2244(b)(3)(A).  When presented with a Rule 60(b) motion after the

denial of a Section 2255 motion, courts in the Second Circuit must first determine whether the

petitioner is attacking the underlying criminal proceeding, or attacking the subsequent habeas

proceeding. See Hines v. United States, 2006 WL 13013 (Jan. 3, 2006)(Scullin, C.J.).[8]  "Where the

Rule 60(b) application challenges determinations made in the underlying criminal matter rather than

the prior habeas proceeding, the Rule 60(b) motion is in actuality a § 2255 petition and must meet

the criteria set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA')." Id.

(quotation marks and citations omitted); see 28 U.S.C. § 2255; 28 U.S.C. § 2244(b)(3)(A); see also

Gonzalez v. Sec'y, Dept. of Corrections, 366 F.3d 1253, 1263 (11th Cir. 2004)(*en banc*)(The

category most frequently seen are "second or successive § 2255 motions or § 2254 petitions

cross-dressed as Rule 60(b) motions.").

> Ordinarily, "when a petitioner ignores the 1996 amendment [to § 2255] by filing a
> second or successive § 2255 petition without first obtaining [Court of Appeals']
> authorization, 'the district court should transfer the petition or motion to [the Second
> Circuit] in the interest of justice.'" Corrao v. United States, 152 F.3d 188, 190 (2d
> Cir. 1998)(quoting []Liriano, 95 F.3d at 123). However, where a district court
> concludes that a Rule 60(b) motion should be construed as a second or successive §
> 2255 motion, transferring the Rule 60(b) motion to the Second Circuit without notice
> to the petitioner "risks adverse consequences that [the petitioner] might wish to
> avoid." Gitten, 311 F.3d at 533.

---

[8]Judge Scullin wrote in Hines:

In Harris v. United States, 367 F.3d 74 (2d Cir. 2004), the Second Circuit noted that federal district
courts must examine Rule 60(b) motions filed in the context of § 2255 applications in order to
ascertain whether the claims asserted therein "'relate[ ] to the integrity of the federal habeas
proceeding [or] the integrity of the ... criminal trial." ' Id. at 80 (quotation omitted); see also Gitten v.
United States, 311 F.3d 529, 531-32 (2d Cir. 2002)).

Hines, 2006 WL 13013, at * 2.

Hines, at * 2.

Instead, "a proper means for a district court to address a Rule 60(b) motion, which in reality is a second or successive § 2255 motion, is to 'simply deny[ ], as beyond the scope of Rule 60(b), ... the portion believed to present new attacks on the conviction.'" Id. at * 3 (quoting Gitten, 311 F.3d at 534); see Roccisano, 2003 WL 21396668, at *3 (rejecting that portion of the Hazel-Atlas claim that attacked the underlying conviction and sentence as "beyond the scope of the [ ] application.").

### e.  Petitioner's Hazel-Atlas claim

In his papers, Petitioner argues that his conviction was secured by the fraudulent representation of the government during his prosecution in 1996. See Hazel-Atlas Motion, dkt. # 1. He makes no mention of a fraud perpetrated in the habeas proceeding.  Thus, the Court finds that in his Hazel-Atlas motion, Petitioner attacks the integrity of the underlying criminal proceeding and attempts to raise a challenge not previously presented in his previous Section 2255 motion.  The Court sees no reason to differentiate Petitioner's "Hazel-Atlas motion" from a Rule 60(b) motion brought after a Section 2255 denial.  To do otherwise would eviscerate Congress's gate-keeping criteria set forth in the AEDPA. See Calderon v. Thompson, 523 U.S. 538, 558 (1998)("AEDPA's central concern [is] that the merits of concluded criminal proceedings not be revisited in the absence of a strong showing of actual innocence."); Gonzalez, 366 F.3d at 1269-70 ("The central purpose behind the AEDPA was to ensure greater finality of state and federal court judgments in criminal cases, and to that end its provisions greatly restrict the filing of second or successive petitions. . . . Applying Rule 60(b) full throttle to final judgments in habeas cases would essentially repeal the later-enacted AEDPA provisions restricting second or successive petitions.").  Accordingly, the Court finds that that portion of the Hazel-Atlas motion addressed to the underlying conviction and

16

sentence is beyond the scope of the present proceeding and must be dismissed without prejudice to presentation before the Second Circuit Court of Appeals for authorization pursuant to 28 U.S.C. § 2244(b)(3)(A).

### f. Attack on Section 2255 proceeding

Assuming *arguendo* that Barrett's reference to the purported Brady violation in his Section 2255 reconsideration motion, and the government's denial that it did anything improper in the underlying criminal prosecution, could be construed as an attack on the prior habeas proceeding, the Court will address the merits of the Hazel-Atlas motion.  See Roccisano, 2003 WL 21396668, at *3 ("To the extent that Roccisano is contesting the validity of his prior unsuccessful habeas proceedings, this Court will assess the merits of his claim.").  The Court finds that the claim is without merit.

Even accepting the truth of the allegations in Turner's and Frederich's affidavits, Petitioner has presented nothing more than the "rank speculation" he presented on his Rule 33 motion in his attempt to establish a fraud perpetrated on the Court. In this regard, assuming that (1) Turner was told at some proffer session (presumably before Barrett's second trial) that the government had information that she might be engaging in illegal activity, and (2) that in the summer of 1996 government agents were watching 110 State Street (presumably a location where Turner lived or frequented), this information does not contradict anything the government previously divulged.

As indicated above, at various times during Petitioner's prosecution the government obtained information that a woman who fit Turner's description and who, like Turner, went by the street name Lexus, had been involved in some transactions indicative of drug sales.  This information, while not establishing that Turner was in fact involved in drug activity, would have

17

lead a reasonable government agent to inquire of Turner, an already-admitted drug dealer, if she was returning to such activity. Assuming that Turner did not admit her criminal activity at the time, and given the then-unsubstantiated allegations that she was engaging in such activity, it would not have been unreasonable for a government agent to tell Turner that the government obtained some information to the contrary and to warn her from engaging in such activity. Until this information was corroborated, however, it did not rise to the level of actual knowledge by the government.

Further, the December 1, 1997 representation by the government that it was watching 110 State Street in the summer of 1996 does not establish that the Government knew, or even believed, in November 1996 that Turner was in fact engaging in criminal activity. Nothing presented to this Court contradicts the government's representations in the November 15, 1996 letter and the subsequent affidavit submitted in opposition to the Rule 33 motion. Petitioner's evidence certainly does not rise to the level necessary to establish an independent claim for fraud upon the court. He has not presented clear, unequivocal, and convincing evidence of a deliberately planned and carefully executed scheme by a court officer to deceive the Court. Rather, he merely relies upon the same type of surmise and speculation presented on his unsuccessful Rule 33 motion. Thus, to the extent that the Hazel-Atlas action can be read as a Rule 60(b) attack on the government's representations in the habeas proceeding, the motion is denied. See Roccisano, 2003 WL 21396668, at *3.

**IV. CONCLUSION**

For the reasons discussed above, Petitioner's "Hazel-Atlas" motion is **DENIED**. That much of the action challenging the underlying conviction and sentence is **DISMISSED without prejudice** to presentation before the United States Court of Appeals for the Second Circuit for

18

authorization to file a second or successive Section 2255 motion  pursuant to 28 U.S.C. §

2244(b)(3)(A).   That much of the action seeking to vacate the judgment in <u>Barrett v. United States</u>,

04-CV-848 (N.D.N.Y.) pursuant to Fed. R. Civ. P. 60(b) is **DISMISSED with prejudice**.

The Clerk of the Court is directed to close the file in this case.

**IT IS SO ORDERED**

DATED:November 7,2006

Thomas J. McAvoy
Senior, U.S. District Judge